LAURA E. SOUTHWICK, Respondent, *v.* NEW YORK CHRISTIAN MISSIONARY SOCIETY et al., Appellants, Impleaded with Others.

*Southwick* v. *N. Y. Christian Missionary Society*, 151 App. Div. 116, affirmed.
(Argued March 13, 1914; decided April 21, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 21, 1912, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term in an action of ejectment.

*Elijah W. Holt* and *Clark A. Craine* for appellants.

*L. L. Thrasher* for respondent.

Judgment affirmed, with costs, on authority of *Woodworth* v. *Payne* (74 N. Y. 196).

Concur: WILLARD BARTLETT, Ch. J., HISCOCK, CHASE and COLLIN JJ.

MILLER, J. (dissenting.)    The plaintiff brought this action in ejectment claiming, as heir of Laura C. Selleck, the right to re-enter for breach of a condition subsequent contained in the latter's deed in 1861 to "trustees in trust of the Methodist Protestant Church of Fredonia and their successors in office." The premises conveyed consisted of a lot 100 feet by 75 feet in the village of Fredonia. The deed recites a consideration of $300. The grant is to "the said party of the second part and to their successors and assigns forever." Following the description are the words: "The above described land being designed for church purposes. It is understood and agreed that the seats therein shall be forever free for the use of any and all persons to occupy in the capacity of worship. But if the seats of the church to be erected thereon or any other church thereon shall be rented or sold then the said above described premises shall revert to said party of the first part or her heirs."

The habendum clause reads: "To Have and to Hold, the said premises, as above described, with the appurtenances, unto the said party of the second part and to their successors in office and assigns forever," and it is followed by the usual warranty clause. The grantee erected a church building on part of the lot and religious services were conducted therein by the Methodist church until May 26, 1875, when the church conveyed the premises to its pastor, Oren C. Payne, to pay him back salary amounting to $3,050. An heir of Laura Selleck brought an ejectment suit against Payne claiming a right of re-entry for breach of condition subsequent, but it was decided that the conveyance of the premises was not a sale or renting of the pews within the meaning of the condition. (*Woodworth* v. *Payne*, 74 N. Y. 196.) Payne conveyed to one Lewis, who in turn conveyed to the defendant, the

.Church of Christ. Each of said deeds contained a stipulation for free seats and a provision that the premises should revert to the grantor in case of a breach. The Church of Christ occupied the premises and conducted religious services in the church edifice, in the later years irregularly and without a pastor, until December, 1906, since when no religious services have been conducted therein. In 1910 the appellant missionary society took, and has since continued in, possession, claiming to own the premises under a provision in the Lewis deed. During all of the time that religious services were conducted the pews remained free. In 1906 the defendant, the Church of Christ, leased the church building to the Fredonia school board for use as a school house. The pews were taken up and stored in the basement and school desks and temporary partitions were put in to accommodate the building to its new use. The school district ceased to use the building in July, 1910, since when it has not been used for any purpose whatever. The plaintiff claims the right to re-enter because the premises have ceased to be used for church or religious purposes and have been put to other uses.

The law does not favor forfeitures. Conditions relied upon to work a forfeiture are construed with great strictness. (4 Kent's Com. 130; *Merrifield* v. *Cobleigh*, 4 Cush. 178, 184; *Craig* v. *Wells*, 11 N. Y. 315; *Post* v. *Weil*, 115 N. Y. 361; *Graves* v. *Deterling*, 120 N. Y. 447; *Rose* v. *Hawley*, 141 N. Y. 366; *Freer* v. *Glen Springs Sanitarium Co.*, 131 App. Div. 352; affirmed, 198 N. Y. 575; *De Veaux College* v. *Highlands Land Co.*, 63 App. Div. 461; *Board of Education* v. *Reilly*, 71 App. Div. 468.) A mere statement in a deed of the purpose of the conveyance or a clause limiting the use to be made of the premises conveyed creates neither a covenant nor a condition and the non-fulfilment of the purpose or a violation of the restriction will not of itself defeat the estate granted. (*Rawson* v. *Inhabitants, etc.*, 7 Allen, 125; *Craig* v. *Wells, supra; Abbott* v. *Curran*, 98 N. Y. 665; *Board of Education* v. *Reilly, supra.*) A party

claiming a forfeiture is entitled to no more than his exact legal right, which he must plainly establish. (*Bradstreet* v. *Clark*, 21 Pick. 389; *Merrifield* v. *Cobleigh, supra; Fowler* v. *Coates*, 201 N. Y. 257.)

We may start with the assumption that the clause in question created a condition subsequent and that so much at least was decided in *Woodworth* v. *Payne* (*supra*). The questions then arise, what was the condition and has it been broken? The conveyance was made for a valuable consideration. The land, a vacant lot, was "designed for church purposes." That statement created neither a condition nor a covenant. There was no express covenant and the grant was not made subject to an expressed condition that the land should be used exclusively for church purposes. The grantee intended to, and did, erect a church edifice thereon, but it did not agree to do so; the conveyance was not made subject to the condition that it should, and there was no provision in the deed that the premises should revert to the grantor in case the grantee failed to erect a church edifice or in the event that the premises should cease to be used for church or religious purposes. The use of the premises was not restricted to a particular denomination, hence the inference is permissible that the provision for free seats was not intended for the grantor's benefit. The grantor probably assumed or knew that the grantee intended to erect a church edifice on the lot, and she may have taken it for granted that after that was done the premises would be used exclusively for church purposes; but she did not exact even a covenant, and the court certainly should not create a condition subsequent by implication.

On the assumption, then, but not in reliance upon a covenant or condition, that the premises would be used for church purposes, it was "understood and agreed" that the seats should be forever free, not simply to the grantor and her descendants, but "for the use of any and all persons to occupy in the capacity of worship." The language thus far is that of a covenant, not a condition. But in either view there was no breach. The seats did

remain free so long as the premises were used for church purposes. An agreement not to sell or rent the pews of a church about to be erected does not imply one forever to conduct religious worship in the church. The grantee, or its successor, the Church of Christ, did not agree to do that for any length of time, much less after, as appears to have happened, its membership dwindled below the point at which it could support a pastor. This court said, per GRAY, J., in *Fowler* v. *Coates* (*supra*), that a fire followed by bankruptcy excused the non-performance of an obligation, imposed as a condition of acquiring title, to run and operate a plant that would utilize the buildings, erected on the premises conveyed, and that there was no breach of the condition in such a case, because the parties had neglected " to provide in the deed for the event of a destruction of the premises by fire and the subsequent inability to ' utilize the buildings.' " *A fortiori*, there was no breach in this case, whether the provision be treated as a covenant or as a condition. The parties did not agree that the premises should be used for church purposes for any length of time, and they certainly did not stipulate that the grantee should continue to provide free seats when there was no one to occupy them.

We come now to the only language which can be construed to create a condition. The premises were to revert if the seats of the church, to be erected thereon, should be rented or sold. That meant the lease or sale of a limited estate or interest to pewholders. (See *Wheaton* v. *Gates*, 18 N. Y. 395, 404.) It did not mean a lease or sale of the entire premises. (*Woodworth* v. *Payne, supra.*) The plaintiff is entitled to the exact legal right stipulated for by her ancestor. That was a right of re-entry on the sole condition that the seats were ever rented or sold. That language is not to be extended by construction. The court will not create a condition by implication in order to forfeit an estate. The party demanding a forfeiture should be confined to the strict letter of the contract. The pews of the church were never rented or sold. The

plaintiff, therefore, was not entitled to maintain the action, and it is unnecessary to discuss the other questions in the case.

However, it remains to consider the effect of the decision in *Woodworth* v. *Payne*. Both sides rely upon that case; the plaintiff, to support the proposition that the condition was broken by the use of the premises for other than church purposes, and the appellant, to support the proposition that a lease or sale of the premises was not a renting or sale of seats within the meaning of the condition. The latter proposition alone was involved and was decided in that case. Mr. Justice BARKER at the Circuit stated the point of the case thus:

"The General Term reversed the findings on the previous trial on the ground that the sale and conveyance of this property by the church society, the grantees of Mrs. Selleck, was not a forfeiture within the meaning of the grant. That the sale as made was not a sale within the meaning of this condition in the deed. That is the law of the case as it now stands, and I shall, therefore, direct a nonsuit."

That was the point on which the decision in this court turned. Judge MILLER, writing for the court, assumed, without discussing the point, that the provision in question created a condition subsequent. In quoting it, he italicised the words "*rented or sold*," showing that the renting or sale of seats was the matter under consideration. In the course of his opinion he did say: "If by any means the object of the grantor was perverted from the purpose she had in view, or the church used or appropriated it for any secular or irreligious purpose, then a forfeiture would follow the act, and the land revert back to the heirs of the grantor" (p. 198), and further on he referred to the use of the premises for other than church purposes on the assumption that that would constitute a breach of the condition. But there was no question in that case of the use of the premises for secular or irreligious purposes, and what was said on that subject was purely *obiter*. It is unnecessary to refer to the many

admonitions of this court that its decisions are authority only for what they decide.   The judge writing the opinion with his attention focussed on the point to be decided may express views on other points which he himself would reject if required to decide them and which of course the concurring judges do not adopt.    The rule of *stare decisis* does not apply.   No one has been harmed by relying upon the view expressed by Judge MILLER that a forfeiture would result from the use of the premises in question for other than church purposes, and it would be the height of injustice to deprive the appellant of its property for the sake of being consistent with an *obiter dictum*, which was probably expressed and concurred in after brief and but passing consideration of the particular matter not then up for decision and which upon mature reflection we are satisfied is unsound.

The judgment should be reversed.

CUDDEBACK and CARDOZO, JJ., concur.